**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WILLIAM HELMERICH,**

            **Plaintiff,**

**-vs-**                                  **Case No. 6:04-cv-1596-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

            **Defendant.**

_____

### **MEMORANDUM OPINION AND ORDER**

This cause came on for consideration without oral argument on review of Defendant's denial of Plaintiff's application for Social Security benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

#### *PROCEDURAL HISTORY*

Plaintiff applied for disability insurance benefits and Supplemental Security Income on November 19, 2001, alleging disability beginning March 10, 2001 (R. 43, 182). Plaintiff's application was denied both initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge ("the ALJ"), and a decision was issued on July 26, 2004, finding Plaintiff not disabled (R. 11-18). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner (R. 4-6). This action followed (Doc. No. 1).

#### *NATURE OF DISABILITY CLAIM*

Plaintiff claims disability based on "severe arthritis in both shoulders and both knees and right leg." (R. 49).

*Summary of Evidence Before the ALJ*

Plaintiff was 49 years old at the time of the ALJ's decision (R. 43), with a high school education and past relevant work experience as a plumber (R. 55, 62).

The medical evidence is set forth in the ALJ's decision. By way of summary, Plaintiff presented to his treating physician, Rebecca Prostko, M.D., on August 15, 2000, complaining of knee and shoulder pain (R. 99). She diagnosed him with degenerative joint disease of the bilateral shoulders and knees. On December 8, 2000, Plaintiff underwent a right knee series, which revealed "minor osteoarthritic degenerative appearing changes." (R. 103). Dr. Prostko treated Plaintiff with cortisone injections on August 15, 2000, August 22, 2000, and June 21, 2001 (R. 95-99).

On January 21, 2002, Robert Kutner, Psy.D., performed a psychological consultative examination on Plaintiff (R. 105-09). Plaintiff was noted to be fully oriented, with normal insight and judgment. Plaintiff was assessed with adjustment disorder with anxiety, and Dr. Kutner concluded that Plaintiff would have no problems with understanding, memory, sustaining attention or concentration, social functioning, or adaptation. Global Assessment of Functioning score was 80. *Id.* It was noted that Plaintiff's anxiety condition "does not appear to prevent him from becoming gainfully employed." (R. 105).

Plaintiff underwent a consultative examination with Mohammed Touheed, M.D., on February 9, 2002 (R. 110-115). Plaintiff presented with complaints of bilateral knee pain, bilateral shoulder pain, bilateral elbow pain and low back pain. It was noted that Plaintiff walked normally and sat comfortably during the examination. The physical examination revealed full range of motion in his thoracolumbar spine, with decreased range of motion of the shoulders and knees (R. 112). Dr. Touheed assessed Plaintiff with bilateral knee pain, right more severe than left; bilateral shoulder

pain; low back pain; bilateral elbow pain, likely secondary to epicondylitis, which was resolved (R. 110-111). X-rays were ordered. The functional assessment was that Plaintiff could stand and walk six hours in an eight hour day; sit six hours; does not need any assistive device, but should consider a knee brace; could carry 20 pounds frequently, 30 pounds occasionally; and could bend and stoop occasionally. Plaintiff had no manipulative limitations, nor any visual, communicative or workplace environmental limitations (R. 110).

X-rays of the knees taken on March 18, 2002, showed chronic degenerative changes on the right, without acute findings, and minor degenerative changes on the left (R. 118 and 119). X-rays of the shoulders on March 18, 2002, showed moderate osteoarthritic changes in the AC joint of the left shoulder, without acute findings, and no abnormality noted in the right shoulder (R. 116-17).

On March 27, 2002, a Residual Functional Capacity Assessment was completed by a state agency physician, which was consistent with the functional assessment of Dr. Touheed (R. 120-27), including the limitation on occasional bending and crouching.

A Psychiatric Review Technique was completed by a state agency psychologist on March 28, 2002, that indicated Plaintiff had a non-severe anxiety impairment, with only mild restrictions on activities of daily living, and no difficulties in maintaining social functioning, concentration, persistence, or pace, and no episodes of decompensation (R. 138).

Plaintiff was seen for a consultative examination on November 14, 2002, by John Spencer Archinihu, M.D. (R. 142-45). On examination, Plaintiff's back was normal and straight leg test was negative bilaterally (R. 142). No joint tenderness was found, and grip strength was 5/5. Gait was normal, with no assistive device, and Plaintiff had no difficulty getting on or off the examination table. Plaintiff's shoulder range of motion was limited to 120 degree forward elevation (out of a

normal 150 degrees) , 35 degree backward elevation (out of a normal 40 degrees), 130 degree abduction (normal is 150 degrees), 25 degrees adduction (normal is 30 degrees), 85 degree external rotation and 35 degree internal rotation (out of 90 degrees and 40 degrees, respectively) (R. 145). The doctor opined that Plaintiff had bilateral shoulder, knee and elbow pain, "mild physical limitations," and noted that Plaintiff could sit for 8 hours, ambulate for half a mile, and lift 30 pounds (R. 142).

Scott Kaplan, Psy.D., performed a consultative examination on Plaintiff on November 18, 2002 (R. 147-49). Plaintiff was oriented to person, place, time and situation, and thought process was logical. Concentration and memory were normal and there was no evidence of delusions or other abnormalities. Plaintiff was diagnosed with adjustment disorder with mixed emotional features and chronic pain syndrome. From a psychological and emotional standpoint, it was noted that Plaintiff was capable of gainful activity, however his medical condition was to be taken into account with regard to occupational functioning.

A Residual Functional Capacity Assessment was completed by a state agency physician on December 6, 2002, that was consistent with the prior state agency evaluation and that of Dr. Touheed, with a finding that limited Plaintiff to occasional kneeling and crawling (R. 164-71).

A Psychiatric Review Technique was completed by a state agency psychologist on December 12, 2002, that indicated Plaintiff had only mild difficulties in maintaining social functioning, with no restrictions on activities of daily living, difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (R. 150-160).

On June 19, 2003, an MRI of Plaintiff's left shoulder indicated findings that "could represent some bursitis" and a "very minimal amount of abnormal signal" consistent with tendonitis (R. 172). The MRI of the right shoulder showed chronic degenerative changes in the supraspinatus and

infraspinatus tendon consistent with partial tearing and tendonitis, and degenerative changes in the AC joint with very minimal narrowing of the supraspinatus outlet; a complex tear involving the posterior horn of the medical meniscus; and a large septated Baker's cyst (R. 173-174).

Plaintiff appeared and testified at his hearing regarding his pain and limitations. Plaintiff appeared at the hearing with a cane, but testified that the cane was not prescribed by his doctor and that he rarely used it (R. 191). He testified that he was prescribed pain pills and that he takes them every day "and then the pain subsides." (R. 191). Plaintiff stated that he walks to the neighbors, watches television, writes letters, and occasionally grocery shops (R. 193). He drives a car, and does housework, cooking and cleaning with some help but pretty much on his own (R. 194). He felt that he could lift 20 pounds, could stand and walk for 15 to 20 minutes, and could sit for about 10 minutes at a time (R. 195-96).

The ALJ determined that Plaintiff had osteoarthritis of the bilateral knees and shoulders; severe impairments, but not severe enough to meet the Listings (R. 14). The ALJ found that Plaintiff had the residual functional capacity to frequently lift/carry up to 20 pounds, occasionally lift/carry up to 30 pounds, walk/stand or sit for about six hours of an 8-hour workday, and push/pull without restriction. He could frequently climb, balance, stoop and crouch, and he may occasionally kneel and crawl (R. 17, Finding 6). Thus, Plaintiff was found to have the residual functional capacity to perform substantially all of a full range of light work (R. 17, Finding 11). The ALJ found that Plaintiff was unable to perform his past relevant work, and, as there were no significant non-exertional limitations, the ALJ applied Medical Vocational Guidelines Rules 201.21 and 201.22 (the "Grids") and concluded that Plaintiff was not disabled (R. 17).

### *THE STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff raises two issues on review: 1) whether the ALJ's finding that Plaintiff was capable of frequently stooping and crouching is supported by substantial evidence, and 2) whether the ALJ

erred in failing to obtain the testimony of a vocational expert. The Court addresses each contention, in turn.

### The ALJ's findings on crouching and stooping

As set forth above, the ALJ found that Plaintiff could frequently climb, stoop and crouch. As correctly pointed out by Plaintiff, and acknowledged by the Commissioner, this finding is inconsistent with the opinions of Dr. Touheed and the state agency physician, noting that Plaintiff could only *occasionally* stoop, bend and crouch. As there is no record evidence that Plaintiff could, indeed, do these tasks on a frequent basis, and there is no showing that the ALJ discredited the opinions, this particular part of the ALJ's finding is, indeed, not supported by substantial evidence. As noted by the Commissioner, however, the defect is not fatal and does not support a remand, as the ultimate finding that Plaintiff could perform the full range of light work is not altered by a finding that Plaintiff could only occasionally stoop, bend and crouch.

The ALJ determined that Plaintiff was capable of performing substantially all of the full range of light work. According to the regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 20 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or the inability to sit for long periods of times. 20 C.F.R. §§ 404.1567(b); 416.967(b).

The ability to frequently crouch or stoop is not required in light work. Social Security Ruling (SSR) 83-14 (clarified at 45 Fed. Reg. 55,566 (1983)), addresses the amount of crouching and stooping (defined as the two forms of bending) required in light work. The ruling states that "to

perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job)." The ruling indicates that stooping and crouching are done frequently in most medium, heavy, or very heavy jobs. *Id.*

Thus, even were the Court to remand the case with instructions to fully credit the only occasional ability to crouch or stoop, it would not alter the ultimate conclusion that Plaintiff was capable of the full range of light work. In this situation, such error is harmless. *See Diorio v. Heckler*, 721 F. 2d 726, 728 (11th Cir. 1983) (ALJ's erroneous consideration of job held more than 15 years earlier was harmless error where consideration of the job did not change claimant's categorization as skilled or semi-skilled).

**Vocational Expert**

Plaintiff next contends that exclusive reliance on the Grids was error in that "given Plaintiff's severe non-exertional limitations, *i.e.,* postural limitations and pain" the ALJ was required to obtain the testimony of a vocational expert. The Court is not persuaded.

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "Grids"). *Foote*, 67 F.3d at 1558. Exclusive reliance on the "Grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R.

Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559; *Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992) (an ALJ may rely solely on the Grids if he or she makes a finding that the claimant's impairments are not so severe as to prevent a full range of employment at the designated exertional level).

Plaintiff contends that non-exertional impairments which significantly limit basic work activities render the Grids inapplicable (citing *Foote*), and if a claimant is unable to perform prolonged walking or standing, or repetitive bending or stooping, he cannot perform a full range of work, citing *Walker v. Bowen,* 826 F. 2d 996, 1003 (11th Cir. 1987) (Plaintiff's brief at 6).[1] This

---

[1] *Walker* stands for the non-remarkable proposition that the exertional limitations need to coincide with the guidelines of the Grids or the Grids should not be used. 826 F.2d 996 at 1003. Plaintiff does not identify how his exertional limitations found by the ALJ do not coincide with the Grids.

-9-

argument improperly combines two separate concepts, however, as limitations in the ability to sit, stand, walk, lift, carry, push or pull are *exertional* limitations. 20 C.F.R. § 404.1569a(a), (b). As set forth above, the Grids are not to be used when the claimant's *non-exertional* impairments are severe enough to preclude a wide range of employment at the level indicated by the *exertional* impairments. Here, the ALJ found that Plaintiff was able to perform the exertional limitations consistent with light work, which does not require repetitive bending or stooping. This finding as to exertional capacity is supported by substantial record evidence.

Pain, on the other hand, is a non-exertional impairment. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated

reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ applied the pain standard, and found Plaintiff to have an underlying medical condition, but determined that Plaintiff's allegations of limitation were not totally credible, citing the disparity between the allegations and the objective medical findings (R. 14-15). The ALJ noted that Dr. Touheed observed Plaintiff walking without difficulty, and Plaintiff was able to get on and off the examination table and put his shoes on without assistance. Dr. Archinihu called Plaintiff's physical limitations mild and both doctors opined that Plaintiff was capable of light work.[2] All of these reasons are supported by substantial evidence in the record and the ALJ's conclusion must therefore be upheld.

## *CONCLUSION*

As the decision below was made in accordance with proper legal standards, and is supported by substantial evidence, it is **AFFIRMED.** The Clerk is directed to enter judgment accordingly, terminate all pending matters, and close the case.

**DONE** and **ORDERED** in Orlando, Florida on October 5, 2005.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

---

[2] Indeed, no physician, including Plaintiff's treating physician, opined that Plaintiff was unable or severely restricted from performing work activities. Plaintiff admitted that the cane he used only occasionally was not prescribed, and that the pain pills he took were effective.

Copies furnished to:
Counsel of Record